## LEACH *v.* BANCROFT.

It is not sufficient cause to set aside a verdict, that, in a controversy whether certain stones constituted a corner bound of two lots of land, a former owner of one of them, and having long acquaintance with the disputed bound, was permitted to testify that he "always supposed those stones were the corner," and that he "knew of no other;" nor is it ground of exception that he was also permitted to testify that no question to the contrary was made during his ownership.

WRIT OF ENTRY. The defendant pleaded *non tenure* to all except a triangular piece of land about one hundred and twenty-seven rods in length and eighty-nine feet in width at the base. It appeared that the plaintiff owned the southerly part of lot No. 11, and the defendant the northerly part of lot No. 10, of the back lots in the Brenton farm, so called, in Litchfield, and that the west line of these lots is the east line of the home lots of Nos. 2, 10, and 11 of that farm. A stake and stones close to a pine tree about midway across the lot east and west was acceded to at the trial by both parties as being a correct bound. The defendant's land extended to the east end of said lot No. 11.

The controversy was as to the south-west corner of back lot No. 11, or the north-west corner of back lot No. 10. The plaintiff claimed that it was near two pine stumps, at a place where his evidence tended to show there were, from seventy-five years ago until

they were carried away in 1860, by one McQuesten, two flat stones; while the defendant claimed that his north-west corner was at a stone bound eighty-nine feet farther north. The evidence showed that the two flat stones, from the first knowledge of them by any of the witnesses, were near the pine trees of which the stumps remain, sometimes a few feet east of them, sometimes a few feet north of them, and again three feet west, and that one of them had upon it what appeared to be letters and figures, but what those letters and figures were no one who examined them could ever determine.

One Quigg (84 years old), a witness called by the plaintiff, testified that he knew said flat stones from the time he was a small boy until he parted with his title in 1833, and saw them occasionally afterwards while he was living in this state. He owned said lot No. 11 from 1819, and one half from 1816. Against the defendant's exception, the plaintiff's counsel was permitted to ask him certain questions, and his answers to the same were received as evidence against the defendant's exception. Said questions and answers were as follows:

Q. During the time you owned said land, what did you understand those stones to be? Ans. I always supposed those stones were the corner. I knew of no other. I suppose they were the south-west corner of my lot.

Q. Was any question ever made during your ownership that they were not the corner? Ans. No question was ever made that they were not the south-west corner, to my knowledge.

Q. Did you understand that the south line of your lot was straight, or crooked? Ans. I never supposed it was crooked, and never heard that it was crooked.

On cross-examination the witness said that no one ever told him what those flat stones were; that he never run the line, and never was present when it was run; and that while he was owner no question was made any way in respect to the boundary.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside because of the admission of said evidence.

*R. D. Barnes, A. F. Stevens,* and *A. W. Sawyer,* for the plaintiff.

*E. S. & H. A. Cutter* and *C. R. Morrison,* for the defendant.

BLODGETT, J. So far as appears, Quigg was a competent witness to prove where and what was the south-west corner bound of lot No. 11; and although the word in his testimony to which exception was taken may not have been the one best adapted to express his meaning, it is nevertheless quite apparent that he testified from knowledge, and not on supposition. It is a familiar mode of expression, with persons in general, to use the word *suppose* to express their understanding as to matters of which they

have not absolute knowledge; and it probably was in this sense that the witness used it. He had the means of knowledge; he was required by the question to give his understanding, and it is improbable that he did not intend to give it. We think, therefore, that while the answer implies an expression of opinion, it is to be regarded, under the circumstances, as essentially a conclusion of fact derived from proper sources, and that practically the contention is one of words merely. The first exception does not assign sufficient cause for setting aside the verdict.

The second raises the question, whether, as tending to show that objects claimed to be a corner bound by one party and denied by the other are in fact such, it is competent to show by a witness who owned the premises of the claimant for many years that during his ownership there was no controversy about the matter, and no claim to the contrary within his knowledge. No objection to the competency of such evidence is perceived, and *Smith* v. *Forrest*, 49 N. H. 230, 236, is a decisive authority in favor of its admissibility.

The third exception depends upon the first and second, and therefore requires no additional consideration.

*Exceptions overruled.*

CLARK, J., did not sit: the others concurred.