624 S.E.2d 474

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Frederick SMITH, Defendant Below, Appellant.**

No. 32582.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 11, 2005.

Decided Nov. 17, 2005.

Darrell V. McGraw, Jr., Attorney General, Colleen A. Ford, Assistant Attorney General, Charleston, for the Appellee.

Aaron S. France, Whiteman & Burdette, P.L.L.C., Fairmont, for the Appellant.

PER CURIAM:

This is an appeal by Mr. Frederick Smith (hereinafter "Appellant") from a conviction in the Circuit Court of Marion County of Possession with Intent to Deliver Cocaine and Possession of a Deadly Weapon by a Felon. The Appellant was sentenced to serve concurrent terms of one to fifteen years and five years. On appeal, the Appellant contends that the lower court erred by denying his motion to suppress a statement he provided to authorities, contending that he had not waived his right to have an attorney present during the statement. Based upon a thorough review of the record, the arguments of the parties, and applicable precedent, we find that the lower court committed no reversible error, and we consequently affirm the Appellant's conviction.

I. Factual and Procedural History

On April 24, 2001, the Appellant was arrested in the home of an acquaintance, Bertha "Peaches" Horton, after Ms. Horton informed the police that the Appellant possessed drugs and a gun and that she wanted the Appellant removed from her home. While at the home, the police found cocaine, marijuana, and a gun that had been reported stolen. The Appellant was taken to the police station, and his Miranda[1]

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

rights were read to him by Sergeant Kelly Moran. Although the Appellant refused to sign a Miranda rights waiver form, he did not indicate that he wished to have a lawyer present. While fingerprinting the Appellant and taking photographs, Officer Raymond Fluharty asked the Appellant whether he knew who owned the gun confiscated by the police. After additional questioning during processing, the Appellant informed Officer Fluharty that the gun belonged to him but that the drugs did not.

The Appellant was indicted by the Grand Jury of Marion County on June 12, 2001. On November 6, 2003, the Appellant filed a motion to suppress the statements he had made to police and a motion to suppress physical evidence. The lower court heard and denied these motions on November 26, 2003. The Appellant was tried by jury in the lower court on December 4 and 5, 2003, and the jury convicted him of Possession with Intent to Deliver Cocaine and Possession of a Deadly Weapon by a Felon.

On appeal, the Appellant maintains that his eighth grade education and learning disability prevented him from fully understanding his right to have an attorney present during questioning by the police. The Appellant contends that the lower court erred by failing to exclude the statement made by the Appellant to the police after refusing to sign the Miranda rights waiver form. The Appellant further argues that the statement was involuntary and was obtained only after extensive questioning by the police officer. Finally, the Appellant contends that the statement was clearly against the weight of the evidence and should not have been admitted at trial.

## II. Standard of Review

■ This Court is confronted with the issue of whether the lower court committed reversible error in denying the Appellant's motion to suppress statements made during police interrogation. In syllabus point one of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), this Court explained the proper standard of review of a court's ruling on a motion to suppress, as follows:

When reviewing a ruling on a motion to suppress, an appellate court should con-

strue all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

This Court has also held that "we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action." *State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995). In syllabus point four of *Riggle v. Allied Chemical Corp.*, 180 W.Va. 561, 378 S.E.2d 282 (1989), this Court also explained as follows:

" 'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion. Point 10 Syllabus, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955).' Syllabus Point 5, *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (1976)." Syllabus Point 5, *Grillis v. Monongahela Power Co.*, 176 W.Va. 662, 346 S.E.2d 812 (1986).

■ On the ultimate question of whether a particular confession was voluntary, this Court explained as follows in syllabus point two of *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994):

This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

Utilizing such standards, we analyze the issues presented in this appeal.

## III. Discussion

### A. Waiver of Miranda Rights

■ This Court has consistently held that the burden is on the State to establish that

the Appellant made an explicit oral or written waiver of his Miranda rights. *See State v. Boxley*, 201 W.Va. 292, 496 S.E.2d 242 (1997), *cert. denied, Boxley v. West Virginia,* 525 U.S. 863, 119 S.Ct. 151, 142 L.Ed.2d 123 (1998); *State v. Rissler*, 165 W.Va. 640, 270 S.E.2d 778 (1980); *State v. McNeal*, 162 W.Va. 550, 251 S.E.2d 484 (1978). Syllabus point two of *Rissler* explained: "In the trial of a criminal case, the State must prove, at least by a preponderance of the evidence, that a person under custodial interrogation has waived the right to remain silent and the right to have counsel present." 165 W.Va. at 640, 270 S.E.2d at 779.

█ The *Boxley* Court stated as follows: "When determining whether a waiver was made, there are three considerations: were the rights given in proper form and substance; did the appellant understand them; and did he waive them?" 201 W.Va. at 297, 496 S.E.2d at 247 (quoting *Rissler,* 165 W.Va. at 646, 270 S.E.2d at 782 (1980)). In syllabus point one of *Rissler,* this Court explained as follows:

It is not invariably necessary that a person under interrogation make an explicit oral or written statement of waiver in order that it may be properly concluded as a matter of law that the person has waived the right to counsel as guaranteed by *W.Va. Const.* art. III § 14 and *U.S. Const.* amend. VI, or has waived the right to remain silent as guaranteed by *W.Va. Const.* art. III § 5 and *U.S. Const.* amend. V.

165 W.Va. at 640, 270 S.E.2d at 779.

█ The Appellant emphasizes the fact that he refused to sign the Miranda rights waiver form after the Miranda rights were read to him.[2] The effect of such refusal to sign a waiver form has been extensively discussed by federal and state authorities. In *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), for instance, the United States Supreme Court explained that the refusal to sign a waiver is not determinative of the admissibility issue and that a defendant may be considered to

have waived his Miranda rights in the absence of a signed waiver form. In *Butler,* the defendant stated that he understood his Miranda rights and would talk to the detective. The North Carolina Supreme Court had ruled that a custodial statement could not be used unless the defendant had explicitly waived his right to counsel. The United States Supreme Court rejected that per se rule, reasoning as follows:

An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda,* mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

441 U.S. at 373, 99 S.Ct. 1755; *see also State v. Montes*, 136 Ariz. 491, 667 P.2d 191 (1983).

In *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336 (1983), *cert. denied, Mitchell v. Idaho,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308, the Idaho court rejected "mechanical or formalistic approaches... to evaluate the procedural safeguards given." 660 P.2d at 1340. The court explained that "[t]he question is not one of form, but whether the appellant, in light of the totality of circumstances surrounding her statements, knowingly and intelligently waived her *Miranda* rights." *Id.* at 1341. "'Any clear manifestation of a desire to waive is sufficient. The test is a showing of a knowing intent, not the utterance of a shibboleth. The criterion is

**2.** The record reflects that the Miranda rights were read to the Appellant in proper form and substance.

not solely the language but a combination of that articulation and the surrounding facts and circumstances.'" *Lloyd v. State*, 45 Ala. App. 178, 227 So.2d 809, 814 (1969) (quoting *Anderson v. State*, 6 Md.App. 688, 253 A.2d 387 (1969)).

In *United States v. Filiberto*, 712 F.Supp. 482 (E.D.Pa.1989), the court explained that "failure to sign a form of waiver does not preclude a finding of waiver, nor does it make further questioning a violation of defendant's constitutional rights." 712 F.Supp. at 487. In *Filiberto*, the court found that the defendant's statements were voluntary despite his refusal to sign a waiver card since the defendant responded to subsequent questions without requesting counsel or invoking the right to remain silent. *Id.*

In *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982), this Court permitted use of a statement made after a defendant had refused to sign a waiver of rights form. This Court explained:

> Trooper R.E. Haynes testified that he orally advised the appellant of his rights and that the appellant appeared to understand them, but that the appellant refused to sign a waiver of rights form. Trooper R.V. Watkins testified that after the appellant was advised of his rights, he asked the appellant where the weapon was, and the appellant responded voluntarily that he had thrown the weapon in the river. Trooper Watkins asked this question knowing that the appellant had refused to sign the waiver of rights form.

169 W.Va. at 462, 288 S.E.2d at 537. The *Gwinn* Court found that admission of the statement was proper despite the defendant's failure to sign the waiver form and his subsequent assertion that he had not understood the rights explained to him.

> In the instant case there was sufficient evidence to support the trial court's conclusion that the statement sought to be introduced was voluntarily made without threat or coercion. Although the trial court made no specific findings on the question of whether the appellant understood his rights, which would be the preferable procedure, there was no evidence introduced that the appellant was incapable of under-

standing his rights, and the appellant's claim that he did not understand his rights was countered by the testimony of Trooper Watkins. From the evidence presented we cannot say that the decision of the trial court on the issue of voluntariness is plainly wrong.

*Id.* at 463, 288 S.E.2d at 538.

Based upon the foregoing precedent, we find that the fact that the Appellant in the present case refused to sign the Miranda rights waiver form is not dispositive of the issue of admissibility of the statement in question.

B. The Totality of the Circumstances

 The totality of the circumstances must be examined to determine whether the Appellant waived his right to have an attorney present, and the State's burden of persuasion is preponderance of the evidence, as syllabus point two of *Rissler* explained. 165 W.Va. at 640, 270 S.E.2d at 779; *see also* Syl. Pt. 5, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975) ("The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case.")

As outlined above, subsequent to being informed of his Miranda rights, the Appellant did not request an attorney. During the processes of fingerprinting and mug shots, Officer Fluharty questioned the Appellant with regard to ownership of the gun. After several questions regarding the gun, the Appellant told Officer Fluharty that the gun did belong to him. At the suppression hearing, the lower court examined this exchange between Officer Fluharty and the Appellant and reasoned as follows:

> [T]he defendant was properly Mirandized, refused to sign the Miranda form, but did not ask for counsel. I think the police, under those kind of circumstances, can continue to question him as this officer did.
>
> I have some problem with the fact he actually asked him several times, but based on what I—what is before the Court at this time, I think it is a voluntary state-

ment. I don't see that there's any violation that the—of the defendant's rights in this regard; therefore, I will allow the testimony.

In an April 28, 2004, order denying the Appellant's post-trial motions, the lower court stated as follows:

Because there was no evidence to the contrary, the Court finds the rights were given in proper form and substance and the defendant understood them. The Court also finds the defendant waived his rights when he made the statement to Officer Fluharty that the gun was his, but the drugs were not. While asking routine processing questions, Officer Fluharty asked the defendant to whom the gun belonged because the gun was listed as stolen on N.C.I.C. When the defendant answered, he effectively waived his rights.

The court continued:

The defendant in the case at bar understood his rights. In fact, he had been convicted of a felony in the past, which would make him familiar with the criminal justice system. Sergeant Moran ceased questioning and left the room when the defendant refused to sign the waiver form. Officer Fluharty asked the defendant during processing if he knew to whom the stolen gun belonged, and the defendant responded.... Based upon the totality of the circumstances, the Court is of the opinion the State proved, by a preponderance of the evidence, the defendant waived his rights.

With regard to his understanding of the rights read to him, the Appellant also raises what this Court considers a spurious argument that his eighth grade education and alleged learning disability prevented him from fully comprehending the Miranda rights as read to him. The Appellant contends that the authority to support this claim is contained in the pre-sentence report. However, the pre-sentence report only restates the information provided by the Appellant himself. The Appellant has not provided any independent evidence indicating that he actually suffers from a learning disability which would prevent him from understanding the rights read to him. No outside source verifies his assertions, and the Appellant did not inform the police officers that he was experiencing any difficulty understanding their recitation of his rights at the time such rights were provided.

Moreover, even if the Appellant does indeed suffer from a learning disability, evidence thereof would had to have been submitted and analyzed to determine its effect upon the admissibility of the statement in question. This Court has previously addressed the issue of a defendant's inability to understand the Miranda warnings due to intellectual limitations. In *State v. Adkins*, 170 W.Va. 46, 289 S.E.2d 720 (1982), this Court stated that "[i]t is the general rule that the intelligence of a person making a confession is but one factor to be considered in determining whether a waiver of rights was voluntary." 170 W.Va. at 53, 289 S.E.2d at 727. The *Adkins* Court further elaborated:

[W]here a person of less than normal intelligence does not have the capacity to understand the meaning and effect of his confession, and such lack of capacity is shown by evidence at the suppression hearing, it is error for the trial judge not to suppress the confession. However, where the defendant's lower than normal intelligence is not shown clearly to be such as would impair his capacity to understand the meaning and effect of his confession, said lower than normal intelligence is but one factor to be considered by the trial judge in weighing the totality of the circumstances surrounding the challenged confession.

*Id.* at 54, 289 S.E.2d at 727. Based upon the absence of concrete evidence that the Appellant suffers from a learning disability and that such condition prevented him from comprehending the rights read to him by police officers, we find no merit to the Appellant's claims that an impairment resulted in an inability to understand the Miranda rights.

## IV. Conclusion

This Court's review of the circumstances in which the Appellant's statement was provided to police officers indicates that the Appellant did indeed waive his right to have counsel present and his right to remain silent during police questioning. As the lower

court observed, the first officer questioning the Appellant terminated the interrogation and permitted the Appellant to begin the processing tasks of fingerprinting and mug shots, under the supervision of Officer Fluharty. During the performance of those tasks, the Appellant was asked about the ownership of the gun. He did not request an attorney or refuse to answer the question and ultimately informed Officer Fluharty that the gun belonged to him. No evidence of duress or coercion exists. Under these circumstances, this Court finds that the State has demonstrated, by a preponderance of the evidence, that the Appellant's statement was voluntary and properly admitted into evidence at trial. Thus, we find that the lower court did not err in concluding that the Appellant knowingly and voluntarily waived his Miranda rights when he responded to Officer Fluharty's questions regarding the ownership of the gun. The statement was properly admitted into evidence, and the arguments offered by the Appellant in an attempt to overturn this conviction fail.[3]

Affirmed.

---

**3.** We find no merit to the Appellant's contention that his statement to authorities should not have been admitted based upon his contention that the statement was clearly against the weight of the evidence. As the State observed in its brief, the Appellant cites no law or persuasive evidence in support of his theory in that regard.