655 S.E.2d 193

**T & R TRUCKING, INC., a West Virginia Corporation, Plaintiff Below, Appellant,**

v.

**Rick MAYNARD, Defendant and Third Party Plaintiff Below, Appellee,**

v.

**Thomas Benton Farley, Jr., Individually, and in his Official Capacity as President of T & R Trucking, Inc., a West Virginia Corporation, Third Party Defendant Below, Appellant.**

No. 33346.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 10, 2007.

Decided Nov. 21, 2007.

Charles E. Hurt, Esq., Charleston, WV, for Appellants.

Dwight J. Staples, Esq., Gail Henderson–Staples, Esq., Henderson, Henderson & Staples, L.C., Huntington, WV, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Wayne County entered on September 19, 2006. In that order, judgment was entered in favor of the appellee, Rick Maynard, pursuant to a jury verdict, in the amount of $64,029.00 plus statutory attorney fees and interest, on his counterclaim for breach of contract against the appellants, T & R Trucking, Inc., and Thomas Benton Farley, Jr., as President of T & R Trucking, Inc. The appellee was further awarded judgment, pursuant to the jury verdict, in the amount of $36,000.00 plus interest, on his third-party complaint for breach of contract against the appellant, Mr. Farley, individually.

In this appeal, the appellants assert three assignments of error. First, they contend that the circuit court erred by refusing to allow them to present evidence that the appellee did not have a valid driver's license or coal mine truck driver certification at the time the contract was executed. Second, the appellants assert that the circuit court erred by not granting their motion for judgment as a matter of law with regard to the breach of contract claim against Mr. Farley, individually. Finally, the appellants argue that the circuit court erred by submitting a verdict form to the jury whereby if they found in favor of the appellee, they could only find against Mr. Farley individually or Mr. Farley as President of T & R Trucking.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, we affirm the final order to the extent that it awards a judgment in favor of the appellee against T & R Trucking in the amount of $64,029.00. The order is reversed insofar as it renders a judgment in favor of the appellee against appellant Thomas Farley, Jr., individually, for $36,000.00. Accordingly, we remand this case to the circuit court to enter a final judgment order consistent with this opinion.

## I.

## FACTS

In March 2001, the appellee, Rick Maynard, became a subcontractor for T & R Trucking, Inc., to do off-road coal hauling.[1] The appellee formed his own corporation, Shepherd's Trucking, and employed two to three drivers depending upon his work schedule. At the same time, the appellee entered into a lease purchase agreement with T & R Trucking whereby he agreed to purchase a certain 1999 Western Star truck from T & R Trucking by making monthly payments in the amount of $2,875.00, beginning in April 2001. T & R Trucking had the truck financed through Financial Federal Credit Union (hereinafter "the credit union"). The lease purchase agreement was reduced to writing and signed by the parties on February 22, 2002. Pursuant to the agreement, the appellee agreed to make a total of twenty-five monthly payments with the final payment due in April 2003.

According to the appellee, he made payments on the truck through February 2002. Thereafter, he says that Mr. Farley, the President of T & R Trucking, disappeared and closed the office of T & R Trucking. At trial, the appellee testified that he was unable to pay T & R Trucking because he could not find Mr. Farley and Mr. Farley never returned his phone calls. To the contrary, the appellants asserted that the appellee did not make the February 2002 payment and that he had failed to make a payment in September 2001.[2] The appellants maintained that the appellee could have located Mr. Farley after the T & R Trucking office was

---

1. The appellee had been previously employed by T & R Trucking in 1998.

2. The appellee claimed that the September 2001 payment was deducted from his hauling payment.

closed because he had Mr. Farley's telephone number and knew that he lived in Chapmanville, West Virginia. The appellants also pointed out the appellee could have simply mailed his payments.

According to the appellee, he was contacted by the credit union in April 2002, and informed that the truck was being repossessed because T & R Trucking had failed to make the payments. The appellee tried to locate Mr. Farley at that time and even left three messages on his answering machine. Because he was unable to locate Mr. Farley, the appellee surrendered the truck by leaving it on the premises of Triad Mining in Lenore, West Virginia.

After the appellee left the truck parked at Triad Mining, it was vandalized. The tires, the drive shaft, and some parts of the engine were removed. The repairs to the truck cost $23,507.29. Subsequently, T & R Trucking filed suit against the appellee alleging breach of contract. The appellee filed a counterclaim against T & R Trucking and a third-party complaint against Mr. Farley, individually and in his capacity as President of T & R Trucking. The case proceeded to trial and was submitted to the jury on August 3, 2006. In response to specific interrogatories on the jury verdict form, the jury concluded that: (1) The appellee did not breach the lease purchase agreement; (2) Mr. Farley, in his official capacity as President of T & R Trucking, breached the lease purchase agreement and that as a result, the appellee should be awarded damages in the amount of $64,029.40; and (3) Mr. Farley, individually, breached the lease purchase agreement entitling the appellee to damages in the amount of $36,000.00. The judgment order was entered on September 19, 2006, and this appeal followed.

## II.

### STANDARD OF REVIEW.

■ This Court has held that, "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va.

138, 459 S.E.2d 415 (1995). With respect to evidentiary rulings of the circuit court, this Court has explained that,

> The West Virginia Rules of Evidence ... allocate significant discretion to the trial court in making evidentiary ... rulings. Thus, rulings on the admissibility of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary ... rulings of the circuit court under an abuse of discretion standard.

Syllabus Point 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). In *Gillingham v. Stephenson*, 209 W.Va. 741, 745, 551 S.E.2d 663, 667 (2001), this Court advised that "[w]e apply a *de novo* standard of review to the grant or denial of a pre-verdict or post-verdict motion for judgment as a matter of law." With these standards in mind, we now consider the issues presented in this case.

## III.

### DISCUSSION

■ The appellants first contend that they should have been permitted to introduce evidence at trial that the appellee did not have a valid driver's license or a coal truck driver's certification. According to the appellants, the appellee lost his driving privileges as a result of DUI convictions. The appellants maintain that they did not know that the appellee had lost his driving rights before they entered into the contract to sell him the truck, and they claim that if they had been aware of this fact, they would have never sold the truck to him. The appellants contend that the appellee's failure to disclose that he lost his driving privileges was an act of bad faith and that they should have been permitted to present this evidence to the jury. The appellants rely upon W.Va.Code § 46–1–304 (2006) which provides that, "Every contract or duty within this chapter imposes an obligation of good faith in its performance and enforcement."

Upon review of the record, we do not believe that the circuit court erred in refusing to allow the appellants to present evidence that the appellee did not disclose that

he did not have a driver's license or the requisite coal truck driver's certification at the time the contract was executed. In Syllabus Point 4 of *Gable v. Kroger Co.*, 186 W.Va. 62, 410 S.E.2d 701 (1991), this Court explained that, "Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant." In this instance, the circuit court determined that evidence that the appellee did not have a driver's license because of DUI convictions was not relevant and in addition, was more prejudicial than probative, and therefore, not admissible. We agree.

In this case, the appellants' sole contention was that the appellee breached the contract by failing to make his payments and then abandoning the truck. The appellee was not employed by T & R Trucking during the term of the lease purchase agreement. Rather, he was an independent contractor with his own hauling business and his own employees. The fact that the appellee may not have had a valid driver's license and may not have disclosed this information to the appellants was clearly not critical to the jury's determination of whether the appellee breached the contract. Moreover, any probative value of such evidence was substantially outweighed by the danger of unfair prejudice. Accordingly, we find that the circuit court did not abuse its discretion by excluding this evidence.

Next, the appellants argue that the circuit court erred by not granting their motion for judgment as a matter of law with regard to the breach of contract claim asserted against Mr. Farley individually. The appellants contend that there was no evidence presented during the trial to show that Mr. Farley acted in any manner other than as President of T & R Trucking. It appears from the record that the circuit court denied the motion for judgment as a matter of law because there was a period of time when T & R Trucking was in a "revoked status" pursuant to W.Va.Code § 11–12C–8 (1992)[3] for nonpayment of its corporate license tax. The appellee argued to the jury that Mr. Farley was liable individually because any action taken by him during the time period that T & R Trucking's corporate license was revoked was as an individual and not as President of the corporation.[4]

Upon review of the record and pertinent authorities, we find that the circuit court erred by not granting judgment as a matter of law on the breach of contract claim asserted against Mr. Farley individually. It is undisputed that T & R Trucking was reinstated in good standing on February 14, 2005. Specifically, in accordance with W.Va. Code § 11–12C–8(c), T & R Trucking was "reinstated to its former rights as if it had not been delinquent."[5] Accordingly, Mr. Farley could not be held liable individually for breach of contract during the time period that T & R Trucking's license was revoked unless evidence was presented to "pierce the corporate veil."

3. W.Va.Code § 11–12C–8(c) states:
(c) *Revocation of certificate of incorporation or certificate of authority.*—Upon the establishment of a finalized liability for corporate license taxes, not subject to further administrative or judicial review under article ten [§§ 11–10–1 et seq.] of this chapter, the certificate of incorporation in the case of a domestic corporation, or the certificate of authority in the case of a foreign corporation, shall be revoked. Any corporation whose certificate of incorporation or certificate of authority has been revoked due to nonpayment of its corporate license taxes shall be reinstated to its former rights as if it had not been delinquent upon payment to the tax commissioner of all delinquent license taxes, plus any interest, additions or penalties accruing thereon.

4. The circuit court's rulings on this issue were contradictory. Initially, the circuit court ruled that the parties would not be able to present any evidence concerning the fact that T & R Trucking's corporate license was revoked for a period of time during the term of the contract. However, during cross-examination of Mr. Farley, the court permitted counsel for the appellee to question him about this matter. Then during closing argument, the circuit court allowed counsel for the appellee to argue that Mr. Farley was liable individually because of his actions during the time period that T & R Trucking's corporate license was revoked. However, the circuit court never instructed the jury on this issue.

5. *See* note 3, *supra.*

■ This Court has explained that, "'The law presumes ... that corporations are separate from their shareholders.' Syl. pt. 3 (in part), *Southern Electrical Supply Co. v. Raleigh County National Bank*, 173 W.Va. 780, 320 S.E.2d 515 (1984)." Syllabus Point 1, *Laya v. Erin Homes, Inc.*, 177 W.Va. 343, 352 S.E.2d 93 (1986). Accordingly,

> In a case involving an alleged breach of contract, to "pierce the corporate veil" in order to hold the shareholder(s) actively participating in the operation of the business personally liable for such breach to the party who entered into the contract with the corporation, there is normally a two-prong test: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist (a disregard of formalities requirement) and (2) an inequitable result would occur if the acts are treated as those of the corporation alone (a fairness requirement).

Syllabus Point 3, *Laya*. In *Laya*, this Court set forth some of the factors to be considered in determining whether to pierce the corporate veil. 177 W.Va. at 347–48, 352 S.E.2d at 98. Among the factors listed were:

> (1) commingling of funds and other assets of the corporation with those of the individual shareholders;
>
> (2) diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders);
>
> (3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, such as formal approval of the stock issue by the board of directors;
>
> (4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation;
>
> (5) failure to maintain corporate minutes or adequate corporate records[.]

*Id.*

Our review of the record shows that the appellee never presented any evidence to support piercing the corporate veil. Rather, the record shows that the appellee merely contended that Mr. Farley was liable individually solely because T & R Trucking's corporate license was revoked for some period of time during the term of the contract. As set forth above, the fact that T & R Trucking's corporate license was revoked for some period of time does not provide a basis for holding Mr. Farley liable individually for breach of contract. As soon as the licensing fees were paid, T & R Trucking was reinstated to its former rights, "as if it had not been delinquent." W.Va.Code § 11–12C–8(c). Accordingly, we find that the circuit court erred by not granting Mr. Farley's motion for judgment as a matter of law.

■ Finally, the appellants argue that the special interrogatories and verdict form provided to the jury were improper and misleading because the jury was only given the option of finding against "Thomas B. Farley, individually" or against "Thomas B. Farley, as President of T & R Trucking." The appellants maintain that the jury should have been given the option of rendering a verdict against T & R Trucking only.

■ Given our finding above, the jury should not have been given the option of rendering a verdict against Mr. Farley individually. To the extent that the verdict form included "Thomas B. Farley, as President of T & R Trucking" as opposed to just "T & R Trucking," we find no error. This Court has held that, "In absence of statutory requirement, whether a jury shall be compelled to answer special interrogatories before arriving at a general verdict, is a matter resting in the sound discretion of the trial court." Syllabus Point 15, *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 207 S.E.2d 897 (1974). We have also explained that, "Where not required by statute, special interrogatories in aid of a general verdict should be used cautiously and only to clarify rather than to obfuscate the issues involved." Syllabus Point 16, *Carper*. Our review of the record reveals that the circuit court used "Thomas B. Farley as President of T & R Trucking" instead of just "T & R Trucking" to clarify for the jury that they would be rendering a verdict against the corporation

and/or Mr. Farley individually. While we believe that the interrogatories and verdict form could have been phrased differently in order to better distinguish between the parties, we find no reversible error.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Wayne County entered on September 19, 2006, is affirmed to the extent that the appellee, Mr. Maynard, is awarded a judgment against T & R Trucking in the amount of $64,029.40. The order is reversed insofar as a judgment is awarded in favor of the appellee in the amount of $36,000.00 against Mr. Farley individually. This case is remanded to the Circuit Court of Wayne County to enter a final judgment order consistent with this opinion.

Affirmed, in part, Reversed, in part, and Remanded with Directions.